# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

RONDA R. GEBRON, )
 )
       **Plaintiff,** )
 )
v. ) Case No. CIV-18-325-SPS
 )
COMMISSIONER of the Social )
Security Administration, )
 )
       **Defendant.** )

## OPINION AND ORDER

The claimant Ronda R. Gebron requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-six years old at the time of the administrative hearing (Tr. 37). She completed her GED, and has no past relevant work (Tr. 26, 266). The claimant alleges inability to work since her application date of October 5, 2016, due to mental health problems, bipolar II, anxiety, depression, mood swings, manic episodes, problems being around other people, panic attacks with shortness of breath, hepatitis C, elevated blood pressure, and undiagnosed stomach pain and cramping (Tr. 265).

## Procedural History

On October 5, 2016, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on April 10, 2012. The application was denied. ALJ Thomas John Wheeler conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 2, 2018 (Tr. 16-28). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but that she was limited to understanding, remembering, and carrying out simple, routine, repetitive tasks not at a production rate pace. Additionally, he found she could meet all end of day goals, attend and concentrate for extended periods (defined

as two-hour increments), and that she remained capable of occasional and incidental interaction with coworkers and supervisors. Finally, he found she could have no work-related contact with the public, but that she was able to deal with occasional changes in a routine work setting (Tr. 23-24). The ALJ concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work she could perform, *i. e.*, table worker, patcher, and assembler/small products (Tr. 26-27).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly evaluate the treating physician opinion of Dr. William Mings, (ii) failing to determine appropriate jobs in sufficient numbers, and (iii) failing to consider certain mental health treatment records. The Court agrees with the claimant's first and third contentions, and the decision of the Commissioner should be reversed.

The ALJ determined that the claimant had the severe impairments of bipolar disorder, post-traumatic stress disorder (PTSD), and neurocognitive disorder (Tr. 18). The relevant medical evidence reveals that the claimant received medical treatment while incarcerated, including psychiatric care for depression and a diagnosis of bipolar II disorder (Tr. 379, 384, 391). Follow-up treatment indicated that she denied thoughts of self-harm and reported positivity regarding her circumstances (Tr. 383). In August 2012, the claimant reported job and offender stressors as well as waxing and waning symptoms, but refused medication because she was living in the faith-based dorm, which apparently prevented her from taking medication in order to stay there (Tr. 386, 393).

Upon her release, the claimant sought treatment at MHMRA of Harris County, reporting that she had spent twenty-four years in prison in total and had difficulty adjusting outside of that environment (Tr. 414). She was again diagnosed with bipolar disorder, most recent episode depressed and severe without psychotic features (Tr. 417). The claimant returned to prison and in January 2015 requested treatment for being "manic," reporting that her prescribed medications were not leveling out her mood (Tr. 517). However, by August 2015, the claimant requested her medications be stopped so she could participate in a program and reported "doing ok" after the medications were stopped (Tr. 533). She requested her medications be restarted in June 2016 but was encouraged to develop coping skills instead (Tr. 552, 812). The claimant was released sometime before the October 2016 application date.

On December 12, 2016, Dr. Kathleen Ward, Ph.D., conducted a mental status examination of the claimant. Upon exam, the claimant was logical with no bizarre thought content, but was noted to have deficits in social judgment and problem solving (Tr. 558-559). Dr. Ward assessed her with bipolar I disorder, PTSD v. adjustment disorder with anxiety, opiate abuse disorder by history, and an unspecified neurocognitive disorder, and encouraged the claimant to continue mental health/substance abuse/relapse prevention treatment (Tr. 560).

On November 6, 2017, Dr. William Mings completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) (Tr. 817-819). He noted that the claimant's diagnoses included bipolar disorder and opioid dependence, and he checked boxes indicating a number of symptoms including crying spells, low energy, paranoia,

racing thoughts, chronic depression, and anger outbursts. Additionally, he wrote that the claimant's "symptoms fluctuate but [she is] fragile emotionally[;] very sensitive to situational stresses" (Tr. 818). He indicated she would miss work about two days per month (Tr. 819). Furthermore, he indicated she had a substantial loss of the ability to maintain concentration for an extended period and to maintain attention/stay on task for an extended period, and that she had some loss of the ability to, *inter alia*, perform at a consistent pace without an unreasonable number and length of rest periods/breaks, act appropriately with the general public, cope with normal work stresses, and accept instruction and respond appropriately to criticism from supervisors (Tr. 817-818).

State reviewing physicians completed Mental RFC assessments finding moderate limitations, and concluded that the claimant could understand, remember, and perform simple and some complex tasks; relate to supervisors and peers on a superficial work basis; could not relate to the general public; but could adapt to a routine work situation (Tr. 133-134, 149-150).

The claimant submitted a number of additional records to the Appeals Council, including another copy of Dr. Ming's assessment and additional records from Carl Albert Community Health Center dated October 24, 2016 to March 22, 2018. The evidence reflects the claimant's continued treatment for bipolar disorder by Dr. Mings, where he noted several times that she had only fair or poor concentration and insight (Tr. 63, 68, 77, 83). The notes reflect generally that the claimant's symptoms were controlled by medication at first, but she reported in July 2017 an increase in depression, including suicidal thoughts with a plan to do so with a car in a garage, and the note states, "but doesn't

currently have a car or a garage anyway." (Tr. 86). She then reported that the medications did not seem as effective as they were originally, resulting in an increase in her depression and/or anxiety at times (Tr. 87-88, 90, 92, 97-98). The Appeals Council indicated that they did not consider them but nevertheless made a determination that the evidence did not show a reasonable probability of changing the outcome of the evaluation (Tr. 2).

The claimant asserts that the ALJ erred in evaluating the opinion evidence in the record, and the Court agrees. The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be

"clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

In his written opinion at step two, the ALJ summarized the claimant's treatment notes and Dr. Ward's examination findings. At step four, he summarized the claimant's hearing testimony and found her statements were not consistent with the record. He noted several instances when the claimant stopped taking her medication and she was still within normal limits and declining medication while in prison. The ALJ made no mention of the other treatment notes or Dr. Ward's assessment at step four. As to Dr. Mings's opinion, the ALJ assigned it partial weight as consistent with the ability to perform less than unskilled work but that the claimant's mental evaluations while incarcerated were within normal limits whether she was on medications or not. He then assigned great weight to the opinions of the state reviewing physicians as to her physical impairments, but only partial weight to them as to her mental impairments, noting that the record established reported difficulties with concentration, persistence, and pace (Tr. 24-26).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by her treating physicians. *See Drapeau*, 255 F.3d at 1214 (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386

(7th Cir. 1984). This is of particular concern where, as here, there is a good indication that the ALJ did not conduct a proper longitudinal assessment of the claimant's impairments, nor consider the differences in her condition while she was incarcerated (which is a very structured environment) and while she was not. 20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation."). Here, the ALJ focused on the records where the claimant functioned well without her medication in a structured environment, ignored the waxing and waning nature of her disorder, and further failed to articulate how the RFC accounted for the documented impairments with concentration, persistence, and pace that affected Dr. Mings's assessment and that the ALJ even acknowledged at step four.

The Court finds that the evidence submitted to the Appeals Council bolsters the claimant's argument as to error. Even though the ALJ did not receive this evidence prior to issuing his decision, the Appeals Council *was* required to properly consider this evidence if it was: (i) new, (ii) material, and (iii) "related to the period on or before the date of the ALJ's decision," *see Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995), but failed to do so here. Evidence is new if it "is not duplicative or cumulative," and this evidence qualifies as such. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d at 96. The evidence must "reasonably [call] into question

the disposition of the case." *Id. See also Lawson v. Chater*, 83 F.3d 432, 1996 WL 195124, at *2 (10th Cir. April 23, 1996) (unpublished table opinion). Here, although the Appeals Council asserted that the evidence would not change the outcome, the evidence supports the serious nature of the claimant's mental impairments and calls into question the ALJ's decision, particularly his findings related to the claimant's abilities related to concentration, persistence, and pace.

Finally, the evidence is chronologically relevant because it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). The treatment notes apply to the period immediately prior to the ALJ's decision. The evidence presented by the claimant after the administrative hearing thus *does* qualify as new and material evidence under C.F.R. §§ 404.970(b) and 416.1470(b), and the Appeals Council should have considered it (Tr. 2), so the newly-submitted evidence "becomes part of the record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). The ALJ had no opportunity to perform the proper analysis, and the Appeals Council failed to analyze it in accordance with the aforementioned standards.

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 5th day of March, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**